# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 15, 2026

Lyle W. Cayce
Clerk

No. 24-40706

Patsy E. Carmon,

*Plaintiff—Appellant*,

*versus*

Clean Harbors Deer Park, L.L.C.; Daniel Tauriello;
International Brotherhood of Teamsters Local 988;
Claude Horton,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-1899

_____

Before Richman, Higginson, and Oldham, *Circuit Judges*.

Per Curiam:[*]

In this employment case, Patsy E. Carmon appeals from the district court's grant of three motions to dismiss, the denial of her motion to set aside the final judgment, and the denial of a motion for new trial. We affirm.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-40706

# I

Taking the facts alleged in the complaint as true,[1] Carmon began working for Clean Harbors Deer Park, LLC ("Clean Harbors"), a hazardous waste incineration facility, in May of 1996. As an employee of Clean Harbors, Carmon was subject to a collective bargaining agreement between Clean Harbors and the International Brotherhood of Teamsters Local 988 labor union ("IBT 988").

After three to four years of employment, Carmon and others filed suit for racial discrimination, resulting in a settlement. In 2003, Carmon filed a complaint with the Department of Labor ("DOL") for nonpayment of overtime, resulting in an administrative order in her favor.

In early 2020, Clean Harbors began to provide decontamination and medical waste management services for the COVID-19 pandemic. Clean Harbors improperly handled the medical waste and failed to warn Carmon of special precautions to take regarding the waste. Several employees fell ill, apparently from COVID-19.

On February 20, 2020, Carmon applied for leave from Clean Harbors under the Family and Medical Leave Act ("FMLA") due to foot surgery. Her request was denied on March 10. On March 13, 2020, Carmon was terminated at the instruction of Daniel Tauriello, the General Manager of Clean Harbors, for accumulating 27 attendance points. Carmon had accumulated 24 of those disciplinary points due to suffering complications from respiratory illness and her foot injury. The final three came when

---

[1] *See Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998))).

Carmon attended a physician's appointment March 6, but Clean Harbors management did not excuse the absence. IBT 988's then-Vice President Claude Horton failed to file a grievance on Carmon's behalf within fifteen days, as required by the collective bargaining agreement. Clean Harbors then failed to pay unused vacation and personal days within six days of Carmon's termination. IBT 988 took no action on Carmon's behalf.

After her termination, Carmon applied for and received pandemic unemployment benefits from the Texas Workforce Commission ("TWC"). Clean Harbors denied in an employment investigation before the TWC that Carmon's absence was COVID-19 related and omitted that they had denied Carmon FMLA leave.

Carmon also filed a complaint with the DOL in July 2020. Carmon later discovered in September of 2023 that Clean Harbors concealed her racial discrimination settlement agreement from the DOL. Carmon also filed a racial discrimination charge with the TWC and the Equal Employment Opportunity Commission ("EEOC") on October 29, 2020. Her charge was dismissed and a right to sue letter was issued by the TWC in September of 2022, and that letter was then adopted by the EEOC in November of 2022.

Carmon filed suit pro se in Texas state court against Clean Harbors, Tauriello, IBT 988, and Horton on April 24, 2024, alleging causes of action under a wide-ranging list of Texas statutes and a Texas state constitutional provision for breaches of her employment contract, the collective bargaining agreement, her settlement agreement, and her administrative order; wrongful discharge; fraud; breach of fiduciary duty; "vicarious liability-agency," "vicarious liability-vice principal and criminal acts of vice principals," and "vicarious liability-vice principal."

Clean Harbor asserted that Carmon raised claims under the FMLA and the Labor Management Relations Act ("LMRA") and removed the case

to federal court under federal question jurisdiction with the consent of the other defendants. Clean Harbors and Tauriello each filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. IBT 988 and Horton filed a joint 12(b)(6) motion to dismiss for failure to state a claim. Carmon did not timely respond to any of the motions to dismiss.

The district court considered the various statutes Carmon listed in her complaint and found them all inapplicable. The court liberally construed Carmon's complaint to allege violations of the FMLA; common-law breach of contract, negligence, and fraud claims; and a breach of the duty of fair representation. However, the district court held all these causes of action were time-barred. The court granted all of the motions to dismiss on August 8, 2024. The court did not enter a final judgment as a separate document as contemplated by Rule 58(a) of the Federal Rules of Civil Procedure.

Carmon filed two affidavits and two documents labelled as motions for a new trial and objections to the dismissal of her claims on August 26, 2024. The district court construed each filing as a separate motion for a new trial and denied them all. Carmon then filed a motion to set aside the final judgment and order a new trial, which the district court denied. Carmon timely appealed.

## II

We first consider the district court's grant of the defendants' motions to dismiss. "We review de novo the district court's order on a motion to dismiss for failure to state a claim under Rule 12(b)(6)."[2] "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most

---

[2] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

favorable to the plaintiff." [3]   "[A] claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." [4]   "'[P]ro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.'   However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" [5]

We do, however, "construe [Carmon's] filings liberally because [s]he is a *pro se* litigant." [6]   We accordingly interpret Carmon's complaint to allege (1) violations of the FMLA and Title VII against Clean Harbors, (2) a hybrid LMRA action against Clean Harbors for breach of the collective bargaining agreement and against IBT 988 and Horton for failing to represent her fairly in the grievance process,[7] (3) state common-law breach of contract and negligence claims against Clean Harbors, and (4) state common-law fraud claims against all defendants.

---

[3] *Taylor*, 296 F.3d at 378.

[4] *Id.* (citing *McConathy*, 131 F.3d at 561).

[5] *Id.* (internal citation omitted) (first quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); and then quoting *S. Christian Leadership Conf. v. Sup. Ct. of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

[6] *Collins v. Dall. Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023).

[7] *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983) ("[A]n individual employee may bring suit against his employer for breach of a collective bargaining agreement. . . . [W]hen the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation[,] . . . an employee may bring suit against both the employer and the union . . . . Such a suit, as a formal matter, comprises two causes of action.  The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement.  The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.").

No. 24-40706

As an initial matter, Carmon argues that the defendants "improperly raised a statute of limitations defense, in a pre-answer motion to dismiss." Carmon is incorrect. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[8]

Carmon's FMLA and Title VII claims against Clean Harbors are time-barred. FMLA claims must be brought within two years of the alleged violation, or three years if the violation was willful.[9] Carmon alleged her request for FMLA leave was denied on March 10, 2020, and her employment was terminated on March 13, 2020. But she did not file suit until April 24, 2024. Even if the violation was willful, Carmon's FMLA claim is time-barred. Additionally, "Title VII provides that claimants have ninety days to file a civil action after receipt of [a] notice [of right to sue] from the EEOC."[10] The EEOC adopted the TWC's right to sue letter in November of 2022. Carmon's Title VII claim was therefore appropriately dismissed.

Carmon's hybrid LMRA claim is also time-barred. The statute of limitations for a hybrid LMRA action is six months and "begins to run when the plaintiff either knew or should have known of the injury itself, i.e., the breach of duty of fair representation."[11] The alleged breaches here occurred in March of 2020. This claim was also appropriately dismissed.

---

[8] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *see also Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) ("[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." (citing *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986))).

[9] 29 U.S.C. § 2617(c)(1)-(2).

[10] *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).

[11] *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989).

No. 24-40706

Carmon's state-law negligence and contract claims against Clean Harbor are similarly time-barred. Under Texas law, negligence claims have a two-year statute of limitations.[12] Carmon's negligence claim is based on conduct that occurred in early 2020, so that claim is time-barred. Texas law also provides that breach of contract claims are subject to a four-year statute of limitations.[13] Carmon alleges she was terminated by Clean Harbors on March 13, 2020. Any breach of contract claim would have expired in March of 2024, before Carmon filed suit in April 2024.

Carmon asserts that her "fraud claims are timely before the court." Texas law provides fraud claims are subject to a four-year statute of limitations.[14] We first consider Carmon's fraud claim against Clean Harbors and Tauriello. Carmon appears to allege three possible bases for a fraud claim: that Clean Harbors made false statements to the TWC unemployment division, that Clean Harbors fraudulently concealed her racial discrimination settlement agreement to the TWC, and that Clean Harbors fraudulently concealed or failed to disclose COVID-19 infections and COVID-contaminated medical waste.

Under Texas law, "[a] fraud claim requires proof of a false, material representation (or failure to disclose information that the party has a duty to disclose) made with knowledge or reckless disregard of its falsity and with the intent that the plaintiff act upon it, as well as proof that the plaintiff acted in reliance on the false representation and thereby suffered injury."[15] Both of Carmon's theories of fraud based on Clean Harbors' alleged statements to

_____

[12] *Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 488 (5th Cir. 2023).

[13] *Kansa Reinsurance Co.*, 20 F.3d at 1369.

[14] *Id.*

[15] *Butler v. Collins*, 714 S.W.3d 562, 565 n.2 (Tex. 2025).

the TWC fail because Carmon does not allege she "acted in reliance on the false representation[s] and thereby suffered injury,"[16] but rather that she still received unemployment benefits from the TWC.   As for Carmon's remaining theory of fraud, the concealment and nondisclosure of COVID-19 hazards necessarily must have occurred during her employment and prior to her termination on March 13, 2020.  Consequently, any possible claim based on this conduct expired before she filed suit in April of 2024.

Carmon argues there was "fraudulent concealment of wrongdoing" which "toll[s] [the] running of limitations."  But Carmon's complaint only alleges she "did not discover the false representations" made "*to the Texas Workforce Unemployment Division*" "until early 2022."  This allegation does not suffice to toll the running of her fraud claim for concealment and nondisclosure of COVID-19 hazards.  For these reasons, Carmon failed to state a claim for fraud against Clean Harbors and Tauriello.

We next turn to Carmon's claim for fraud against IBT 988 and Horton.[17]  Carmon first alleges IBT 988 and Horton failed to disclose health and safety risks and violations related to COVID-19 medical waste.  Because this conduct occurred during her employment prior to her March 13, 2020 termination, her suit was filed outside of the four-year statute of limitations.  Carmon further alleges IBT 988 and Horton "remained silent . . . in a racial discrimination investigation . . . when called to testify in September 2022" and "failed to testify, at a Texas Workforce Commission/Equal Employment

---

[16] *Id.*

[17] The state-law claims may be barred by § 301 of the LMRA, but we decline to consider that question and dispose of the claims on the pleadings under Rule 12(b)(6). *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 266 (1994) (holding that a state-law claim is preempted where it depends on interpreting the collective bargaining agreement, but not where it is independent of the agreement).

Opportunity Commission Investigation [in] September 2022." While these claims may not be time-barred, Carmon fails to allege the nondisclosure was done "with the intent that the plaintiff act upon it," and provides only vague and conclusory statements to establish she "acted in reliance on the false representation and thereby suffered injury."[18] Carmon therefore failed to state a claim for fraud against IBT 988 and Horton.

## III

Carmon next argues that the trial court erred by denying her request to amend. In her second post-dismissal motion, her motion to set aside the final judgment and order denying a new trial, Carmon argued, "[t]he Court abused its discretion, when the Court did not provide the plaintiff the opportunity to amend fraud, [sic] what the court deemed a defective pleading." But at no point did Carmon actually request leave to amend, and the district court did not dismiss her case with prejudice. Carmon appears to assert the district court should have sua sponte given her leave to amend. However, "[a] party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals."[19] We find no error on the record before us.

## IV

Finally, we consider the district court's denial of Carmon's motion to set aside the final judgment and order denying a new trial. "A motion asking the court to reconsider a prior ruling is evaluated either as a motion to 'alter or amend a judgment' under Rule 59(e) or as a motion for 'relief from a final

---

[18] *Butler*, 714 S.W.3d at 565 n.2.

[19] *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

judgment, order, or proceeding' under Rule 60(b)."[20]   "If the motion was filed within twenty-eight days after the entry of the judgment, the motion is treated as though it was filed under Rule 59."[21]  Because the district court did not enter judgment as a separate document as provided in Federal Rule of Civil Procedure 58(a), the twenty-eight days for filing a Rule 59(e) motion did not begin to run upon the grant of the motions to dismiss.[22]  We therefore consider Carmon's motion as arising under Rule 59(e).

We review the denial of Rule 59(e) motions for abuse of discretion.[23]  "Rule 59(e) of the Federal Rules of Civil Procedure allows a court to alter or amend a judgment to (1) accommodate an intervening change in controlling law, (2) account for newly discovered evidence, or (3) correct a manifest error of law or fact."[24]  Carmon argues that she is entitled to relief due to fraud by an opposing party because the corporate defendants "failed to file [a] disclosure statement, as required by Rule 7.1" and because their attorneys "failed to obtain written consent from Carmon about method of service" concerning removal proceedings.  Elsewhere in her brief, Carmon argues the district court committed a clear error of law by using the date of her discharge for the running of the statute of limitations, and cites *Loper Bright Enterprises v. Raimondo*[25] as an intervening change in controlling law because "the Court must make a determination, if COVID-19 protections were applied properly."  Carmon "produce[s] no new evidence to support these

---

[20] *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012); *see* Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60(b).

[21] *Id.*

[22] *See Whitaker v. City of Houston*, 963 F.2d 831, 833 (5th Cir. 1992).

[23] *See Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019).

[24] *Id.*

[25] 603 U.S. 369 (2024).

No. 24-40706

arguments, nor do[es she] establish any manifest legal or factual error.  Thus, the district court . . . did not abuse its discretion."[26]

**V**

We AFFIRM the district court's grant of the motions to dismiss and the denial of the motion to set aside the final judgment and order denying a new trial.

_____

[26] *In re Crescent Res., L.L.C.*, 496 F. App'x 421, 425 (5th Cir. 2012).