United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 29, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-11049

JEFFREY SCHILLER, et al.,

Plaintiffs,

ALPERT GROUP, on behalf of themselves and all others similarly situated,

Plaintiff-Appellant,

versus

PHYSICIANS RESOURCE GROUP INC.; EMMETT E. MOORE;
RICHARD M. OWEN; RICHARD J. D'AMICO; JOHN N. BINGHAM; AND
ARTHUR ANDERSEN & CO.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, HIGGINBOTHAM, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this appeal, we determine whether the district court erred by 1) dismissing Alpert Group's

Third Amended Complaint with prejudice without granting leave to amend, and 2) denying Alpert

Group's Rule 59(e) motion to vacate and modify the judgment. After reviewing the claims, we affirm

the judgments of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

This is a private securities fraud action brought on behalf of all persons who purchased or otherwise acquired common stock of Physicians Resource Group ("PRG"), a Dallas-based provider of physician practice management services to eye-care doctors. Alpert Group alleges that during the class period, September 15, 1995 through November 1, 1997, the defendants - PRG, PRG's independent auditor, Arthur Andersen L.L.P. ("Andersen"), Emmett Moore ("Moore"), Richard M. Owen ("Owen"), Richard J. D'Amico ("D'Amico"), and John N. Bingham ("Bingham") - made a series of false and misleading statements to the investment community about PRG's integration of some 150 practices it acquired nationwide and about PRG's business operations, in an effort to inflate the price of PRG's common stock. When PRG revealed its true financial and business condition, beginning in December 1996 and continuing through March 1997, the price of its common stock declined more than ninety-three percent from its class period high and caused investors to lose millions.

In December 1997, Jeffrey Schiller ("Schiller") and Diversified Investments Holdings LP ("Diversified") filed the initial class action complaint against PRG, Moore, Owen, D'Amico, and Bingham, alleging violations of §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5. The initial complaint was amended in July 1998. Schiller and Diversified filed a separate action against Andersen, which was transferred to the district court and consolidated with the instant case. In May 1999, the Alpert Group ("Alpert Group") was appointed as lead counsel. The Second Amended Complaint was filed on September 29, 2000. The Third Amended Complaint was filed on December 21, 2000. On February 5, 2001, the defendants moved to dismiss the Third Amended Complaint for failure to state a claim upon which relief could

2

be granted. In its response in opposition to the motion to dismiss, Alpert Group requested that the court allow further amendment of the complaint if the court believed that the Third Amended Complaint did not state a claim upon which relief could be granted. Alpert Group did not, however, formally move for leave to amend, and did not attach a copy of any proposed amended complaint.

The district court granted the defendants' motions to dismiss the Third Amended Complaint on February 26, 2002, more than a year after the defendants' motions were filed. In that order, the district court stated:

> Plaintiffs have requested the court to allow further amendment of their Complaint if it believes that they have not stated a claim upon which relief can be granted . . . .

> The court concludes that Plaintiffs have stated their best case after four bites at the apple. As the Fifth Circuit has stated, "[a]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." Jacquez v. Procunier, 801 F.2d 789, 792-93 (5th Cir. 1986). The court believes that permitting a fifth pleading attempt would be an inefficient use of the parties' and the court's resources, would cause unnecessary and undue delay, and would be futile. For the reasons stated herein, Plaintiffs' claims are dismissed with prejudice.

On March 12, 2002, Alpert Group filed a motion to vacate the judgment and modify the order of dismissal. In that motion, the Alpert Group did not argue that the district court erred in dismissing the Third Amended Complaint - - instead, it argued only that the district court erred by dismissing the complaint with prejudice. In that motion, Alpert Group requested leave to file the proposed Fourth Amended Complaint, which was attached to the motion. The district court denied the motion to vacate or modify on August 15, 2002. Alpert Group now appeals.

### DISCUSSION

Alpert Group appeals the dismissal with prejudice of its Third Amended Complaint and the denial of its motion to vacate or modify the judgment and its request for leave to file the Fourth

Amended Complaint. Specifically, Alpert Group argues that "the district court's refusal to allow amendment, both after dismissal of the Third Amended Complaint [with prejudice] and again on [its Rule 59(e) motion for] reconsideration when it presented the [district] court with the proposed Fourth Amended Complaint, merits reversal." We review the district court's denial of a leave to amend for abuse of discretion. See Cinel v. Connick, 15 F.3d 1338, 1346 (5th Cir. 1994); see also 6 Charles Alan Wright et al., Federal Practice and Procedure: Civil 2d § 1486 (2d ed. 1990) ("Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed.").

We likewise review "the district court's denial of [Alpert Group's] Rule 59(e) motion for abuse of discretion, in light of the limited discretion of Rule 15(a)." Rosenweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003).[1] Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case. See Shivangi v. Dean Witter Reynolds, Inc., 825 F.2d 885, 891 (5th Cir. 1987). In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. Id. at 891.

I.      Did the district court err in dismissing Alpert Group's Third Amended Complaint with prejudice?

We initially note that Alpert Group does not contend that the district court erred in dismissing

---

[1]Although the defendants argued that the rules governing Rule 15(a) do not apply in this case, the defendants concede that this Court's recent decision in Rosenzweig suggests otherwise.

its Third Amended Complaint for failure to state a claim; rather, Alpert Group argues that the district court erred in dismissing its Third Amended Complaint with prejudice, which had the effect of denying it the opportunity to file another complaint. As noted above, the district court noted the following in rejecting Alpert Group's request to allow further amendment of its complaint:

> The court concludes that Plaintiffs have stated their best case after four bites at the apple. As the Fifth Circuit has stated, "[a]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." Jacquez v. Procunier, 801 F.2d 789, 792-93 (5th Cir. 1986). The court believes that permitting a fifth pleading attempt would be an inefficient use of the parties' and the court's resources, would cause unnecessary and undue delay, and would be futile.

In this case, the district court allowed Alpert Group to amend its complaint four times. Moreover, for more than a year before the district court's dismissal with prejudice, Alpert Group had the opportunity to seek leave to amend its complaint. Given the veracity of the defendants' challenge to the sufficiency of Alpert Group's Third Amended Complaint, Alpert Group should have sought leave to file its Fourth Amended Complaint.[2] It appears from the record, however, that instead of moving for leave to file a Fourth Amended Complaint, Alpert Group chose to stand by its Third Amended Complaint and risk an adverse ruling from the district court. Despite its present protestations, Alpert Group knew that an adverse ruling was possible as it was aware that identical allegations against PRG had already failed to withstand a Rule 12(b)(6) challenge. See RGB Eye Assocs., PA v. Physicians Resource Group, Inc., 1999 WL 980801 (N.D. Tex. Oct 27, 1999). As experienced securities litigators, Alpert Group's counsel must have known that the district court

---

[2]Alpert Group alleges that it was on the verge of filing the Fourth Amended Complaint when the district court ruled.

could dismiss its suit with prejudice, thereby depriving it of further opportunity to amend. In <u>Jacquez v.Procunier</u>, this Court held that "at some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." 801 F.2d 789, 792 (5th Cir. 1986). In this case, Alpert Group had a fair opportunity to present its case, but failed to do so. As a result, the district court did not abuse its discretion in dismissing Alpert Group's Third Amended Complaint with prejudice.

II.  Denial of Alpert Group's Rule 59(e) motion

Alpert Group argues that the district court abused its discretion in denying its Rule 59(e) motion. "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" <u>Rosenzweig</u>, 332 F.3d at 863-64 (quoting <u>Simon v. United States</u>, 891 F.2d 1154, 1159 (5th Cir. 1990)). Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law. <u>See</u> <u>In re Benjamin Moore & Co.</u>, 318 F.3d 626, 629 (5th Cir. 2002).[3]

---

[3]Alpert Group argues that leave to amend is warranted because this Court's decision in <u>Nathenson v. Zonagen, Inc.</u>, 267 F.3d 400 (5th Cir. 2001) represents an intervening change in the law. We reject Alpert Group's argument for two reasons. First, <u>Nathenson</u> was decided on September 25, 2001, approximately five months before the district court granted the motions to dismiss, and thus cannot constitute an intervening change in the law. Second, we conclude that <u>Nathenson</u> did not change the law with respect to the pleading requirements in securities fraud cases. <u>Nathenson</u> held that the enactment of the Private Securities Litigation and Reform Act ("PSLRA") did not generally alter the substantive scienter pleading requirements for § 10(b) and Rule 10(b)(5) securities fraud claims. <u>See</u> <u>Goldstein v. MCI WorldCom</u>, Nos. 02-60322, 03-60248, 2003 WL 21738963, at *5 (5th Cir. July 28, 2003). The Court in <u>Nathenson</u> merely confirmed that scienter of severe recklessness remained a valid basis for liability under § 10(b) and Rule 10(b)(5) in light of the plain language of the PSLRA. <u>Id.</u>; <u>see also</u> <u>Nathenson</u>, 267 F.3d at 410. We likewise reject Alpert Group's argument that <u>ABC Artibtrage Plaintiffs Group v. Tchuruk</u>, 291 F.3d 336 (5th Cir. 2002) and <u>Abrams v. Baker Hughes, Inc.</u>, 292 F.3d 424 (5th Cir. 2002) represent an intervening change in the law. Alpert Group was well aware of the pleading standards, but simply failed to meet them.

In denying Alpert Group's Rule 59(e) motion, the district court noted the following:

> Upon review of the Plaintiff's proposed Fourth Amended Complaint, the court concludes that the factual allegations contained therein were available before Plaintiff filed his Third Amended Complaint in December of 2000. Plaintiff does not explain why any of the additional factual allegations contained in the proposed Fourth Amended Complaint qualify as "new evidence," or why Plaintiff did not include such allegations in any of the prior versions of his Complaint. Moreover, even assuming the additional factual allegations contained in Plaintiff's proposed Fourth Amended Complaint constitute "newly discovered evidence," Plaintiff fails to explain why he waited more than three years after this case before he thoroughly investigated the factual bases of his claims. ....Finally, the court has reviewed Plaintiff's proposed Fourth Amended Complaint and finds the allegations contained therein, particularly with respect to scienter, substantially similar to the allegations contained in Plaintiff's Third Amended Complaint. In fact, many of the allegations contained in the proposed Fourth Amended Complaint are identical to those contained in the Third Amended Complaint, and a number continue to rely on impermissible "group pleading." Notably absent, however, are allegations that demonstrate how Defendants directly benefitted from the alleged fraud, or other specific facts that raise a strong inference of fraud. Based on its review of the Fourth Amended Complaint, the court concludes, as it did [before], that any amendment to Plaintiff's Third Amended Complaint would be futile.

We agree with the district court's conclusion. After a thorough review of the Third and Fourth Amended Complaints, we find that the Fourth Amended Complaint is not based on any newly discovered evidence that was unavailable prior to the district court's final judgment. See Rosenzweig, 332 F.3d at 865.

Furthermore, Alpert Group has failed to offer a reasonable explanation regarding why it was unable to present this purported newly discovered evidence before the district court's final judgment. Although Alpert Group asserts that the new evidence set forth in its Fourth Amended Complaint was not available prior to judgment, it provides no evidence in support of this statement. We reject Alpert

7

Group's assertion that the delay was based on its inability to control when witnesses come forward. The record reflects that Alpert Group did not begin its investigation until after the Third Amended Complaint was filed. Because the Fourth Amended Complaint was not based on newly discovered evidence that was unavailable prior to the district court's judgment, we find that the district court did not abuse its discretion in denying Alpert Group's Rule 59(e) motion. See Vielma v. Eureka Co., 218 F.3d 458, 468 (5th Cir. 2000) (noting that "'[i]n cases where a party seeks to amend her complaint after entry of judgment, we have consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling'") (quoting Briddle v. Scott, 63 F.3d 364, 380 (5th Cir. 1995)); see also Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co., 174 F.3d 656, 658 n.1 (5th Cir. 1999) (noting that a Rule 59 motion based on new evidence may be denied if the movant fails to adequately explain why the evidence was not available prior to judgment). Moreover, in most respects, the proposed Fourth Amended Complaint is simply a re-write of the Third Amended Complaint. Although some of the allegations are new and add bulk to the complaint, as the district court explained, the allegations do not demonstrate how the defendants directly benefitted from the alleged fraud, or other specific facts that raise a strong inference of fraud. We agree with the district court that allowing yet another amendment would be an exercise in futility.[3] Thus, we find that the

---

[3]In determining that further amendment would be an exercise in futility, the district court stated that the Fourth Amended Complaint erroneously relied on the group pleading doctrine. "Group pleading" allows a plaintiff to rely on a presumption that statements in company generated documents represent the collective work of those individuals directly involved in the company's daily management. The parties dispute whether the group pleading doctrine survives the enactment of the PSLRA. It should be noted that the district court dismissed Alpert Group's Third Amended Complaint in part because it relied on group pleading. As Alpert Group did not appeal from the dismissal of its Third Amended Complaint, we need not reach the issue of whether group pleading is viable following the enactment of the PSLRA. Even if Alpert Group is correct regarding the

district court did not abuse its discretion in denying Alpert Group's Rule 59(e) motion.

## CONCLUSION

We affirm the district court's dismissal with prejudice of Alpert Group's Third Amended

Complaint and the denial of Alpert Group's Rule 59(e) motion.

AFFIRMED.

---

continued viability of the group pleading doctrine, this error does not render the district court's denying amendment an abuse of discretion.